# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Daniel Wolff,

      Petitioner

v.

Brian Williams, et al.,

      Respondents

Case No.: 2:20-cv-00494-JAD-EJY

**Order Denying Petition for a Writ of Habeas Corpus and Granting Motion to Seal**

[ECF Nos. 18, 58]

In this habeas corpus proceeding under 28 U.S.C. § 2254, Daniel Wolff challenges his 2004 Nevada state-court convictions for first-degree murder and robbery.[1]  He claims that he is entitled to relief based on (1) the admission of gruesome autopsy and crime-scene photographs, (2) the belated disclosure of inaccurate testimony, (3) ineffective assistance of counsel related to the belated disclosure, (4) prosecutorial misconduct, (5) a defective reasonable-doubt instruction, and (6) the cumulative effect of errors at trial.  Having evaluated these claims, I find that habeas relief is not warranted, so I deny Wolff's petition, deny him a certificate of appealability, and close this case.

## Background

**A.     The facts underlying Wolff's convictions[2]**

In the early morning hours of December 13, 2001, Wolff met Richard Marotto when Marotto gave him and his two acquaintances, Debbie Monaco and Charles Conner, a ride from

---

[1] ECF No. 18.

[2] These facts are taken from the trial transcripts.  ECF Nos. 22-36 through 22-39, 22-41, 23-1, 23-4, 23-8 through 23-11, 23-14 through 23-20 and 23-23.  For simplicity's sake, I cite to these exhibits generally for this entire fact section.  I make no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence from the state court.  My summary is merely a backdrop to my consideration of the issues.

one bar, The Eagle, to another, Snick's Place.  On the way, Marotto dropped off Bruce Butler—a friend he had met a few days earlier—at the Stardust hotel.  Marotto told Butler that he would give him a ride to the airport later that morning.  At some point, Wolff and Marotto left Snick's Place in Marotto's car and drove to Marotto's residence.  When Marotto did not arrive to give him a ride, Butler unsuccessfully attempted to contact Marotto by calling his cell phone and home phone several times.  In the days that followed, Marotto's mother, Beatrice Marotto-Vintanza, also tried to call Marotto several times but was unable to reach him.

On December 22, 2001, Beatrice called her other son, David Marotto, and asked him to check on his brother.  David and Marotto's neighbor, Louis Stutzman, entered Marotto's house, found it in disarray, and, when they entered Marotto's bedroom, found his body on the bed.  A plastic garbage bag had been placed over Marotto's head and an extension cord was wrapped around his neck.  Two kitchen knives had been plunged into his body, one in his left chest and one in his right shoulder.  Marotto also had numerous cuts and stab wounds throughout his body.  Marotto's car was also missing.

According to Dr. Donna Smith, the medical examiner who conducted the autopsy, Marotto had died from blunt-force trauma to the head, with asphyxia due to ligature and plastic bag and multiple incised and stab wounds as contributing factors.  Small pieces of marble were found in the plastic bag covering Marotto's head, and a broken marble slab was found in Marotto's swimming pool.

After interviewing the people Marotto was with on the evening of December 12 and the morning of December 13, 2001, Las Vegas Metropolitan Detective James LaRochelle conducted a pawn check and discovered that Wolff had pawned several items belonging to Marotto.  Marotto's car was discovered several miles from Marotto's home, but within walking distance of

Wolff's residence.  When interviewed by LaRochelle, Wolff stated that he and Marotto went to an adult bookstore after leaving Snick's Place.  Wolff told LaRochelle that he left Marotto and took the bus home from the bookstore after seeing Marotto fondling another man.  When LaRochelle confronted Wolff with the evidence he had gathered, Wolff claimed that he was not the last person with Marotto and became visibly nervous.  LaRochelle arrested Wolff at the conclusion of the interview and executed a search warrant at his residence, recovering several items belonging to Marotto, including the keys to Marotto's car.

Wolff testified at trial and gave the following account.  While at Snick's Place, he became nauseous from taking GHB, a drug that Marotto had provided him and the others in the car.  Marotto offered him a ride home but asked Wolff if they could stop at Marotto's house first.  Wolff agreed, thinking that the request meant that "a possible sexual encounter was going to occur."  Upon arriving, Marotto gave Wolff a brief tour of the house, then the two sat in the dining room smoking cigarettes and engaging in small talk.  Marotto offered Wolff a Pepsi, which Wolff drank but did not finish because it tasted "too sweet."  Wolff then became nauseous again and asked Marotto if he could lie down.  There was a couch in the living room, but there were no curtains on the living-room window, so Wolff accepted Marotto's offer to lie down in his bedroom.  Wolff woke up briefly, noticed that Marotto was outside cleaning his pool, and went back to sleep.  He woke up sometime later without his clothes on, with searing pain in his rectum, and with Marotto on top of him.  The two exchanged a few blows before Wolff grabbed a marble slab and swung it at Marotto, hitting him a couple of times.  Wolff then went outside, threw the slab in the pool, and jumped into the pool himself because he "felt dirty."  After gathering his clothes and getting dressed, Wolff took knives out of a kitchen drawer and stabbed Marotto because Wolff was furious about what had happened.  Wolff did not remember placing

the bag over Marotto's head or wrapping the cord around his neck, but he did remember taking several of Marotto's possessions and his car.

**B.    Procedural history**

After a trial in the state district court for Clark County, Nevada, the jury found Wolff guilty of first-degree murder with use of a deadly weapon and robbery with use of a deadly weapon.[3]  In the penalty phase of the trial, the jury imposed a sentence of life without the possibility of parole for the murder that was enhanced with an equal and consecutive sentence for use of a deadly weapon.[4]  After amendments for time served and restitution, a second-amended judgment of conviction was entered on January 4, 2005, sentencing Wolff to 40–180 months on the robbery and life without the possibility of parole on the murder, plus an equal and consecutive sentence for the deadly weapon enhancement.[5]  The Supreme Court of Nevada affirmed the judgment in September 2006.[6]

Two years later, the state district court clerk filed Wolff's pro se postconviction petition for a writ of habeas corpus that the court denied as untimely.[7]  On appeal, the Supreme Court of Nevada noted that the petition was stamped "received" nearly a year before it was filed and remanded the case to the lower court to determine whether the petition should be deemed timely.[8]  Due to delays caused by at least two appointed attorneys failing to act on Wolff's

---

[3] ECF No. 23-27.

[4] ECF No. 23-30.

[5] ECF No. 23-24.

[6] ECF No. 24-17.

[7] ECF No. 24-23; ECF No. 24-31.

[8] ECF No. 24-37.

behalf, the state district court did not determine that the petition was timely until April of 2015.[9] In September 2016, Wolff filed a counseled supplement to his state petition.[10]  The state district court held an evidentiary hearing and subsequently denied relief.[11]  The Supreme Court of Nevada entered an order of affirmance in January 2020 and issued a remittitur the following month.[12]

Wolff initiated this federal habeas corpus action in March 2020.[13]  I directed Wolff to file an amended petition to correct defects in the original.[14]  After Wolff filed a pro se amended petition, I appointed the Federal Public Defender to represent him.[15]  Wolff filed a counseled second-amended petition in March 2021, containing ten grounds for relief.[16]  Respondents moved to dismiss all grounds as untimely and grounds 1, 2, 4, 5, 6, 7, 8, and 10 as unexhausted or procedurally defaulted.[17]  I granted the motion as to grounds 2, 6, 7, and 8; deferred a ruling on ground 4 until merits review; denied the motion in all other respects; and directed the respondents to answer the remaining claims.[18]  They did,[19] and Wolff replied.[20]

---

[9] ECF No. 25-9.

[10] ECF No. 25-12.

[11] ECF No. 25-26; ECF No. 25-28.

[12] ECF No. 25-54; ECF No. 25-55.

[13] ECF No. 5.

[14] ECF No. 4.

[15] ECF No. 11; ECF No. 13.

[16] ECF No. 18.

[17] ECF No. 41.

[18] ECF No. 47.

[19] ECF No. 54.

[20] ECF No. 54; ECF No. 56.

**Discussion**

**A.    Legal standards for federal habeas review**

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[21]   A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[22]   And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[23]   Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[24]   The "objectively unreasonable" standard is difficult to satisfy;[25] "even 'clear error' will not suffice."[26]

---

[21] 28 U.S.C. § 2254(d).

[22] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[23] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

[24] *Id*. at 1705–06 (emphasis in original).

[25] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[26] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Habeas relief may be granted only if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[27] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[28]   "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[29]   Federal habeas law "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[30]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[31]   Similarly, the federal court reviews a claim de novo if the state courts never reached the merits of the claim.[32]   The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief,[33] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[34]

---

[27] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[28] *Id.* at 103.

[29] *Id.* at 101.

[30] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[31] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

[32] *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002).

[33] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[34] 28 U.S.C. § 2254(e)(1).

**B.      Analysis of Wolff's claims**

     *1.      Ground one—admission of gruesome autopsy and crime-scene photographs*

Prior to trial, defense counsel moved to exclude autopsy photographs of Marotto, crime-scene photographs, and other gruesome photographs.[35]  Counsel argued that the photos were "highly inflammatory" and would not assist the jury in ascertaining any facts, such as cause of death, that could not be demonstrated using other available evidence.[36]  The trial court excluded some of the photographs but allowed in twenty autopsy photos and numerous crime-scene photos.[37]  At trial, the state had Dr. Smith describe what was depicted in each of the autopsy photos.[38]  Wolff contends that the autopsy photos "were gruesome, duplicative, and reflective of injuries not contested by the defense."[39]  Several of the crime-scene photos show part or all of Marotto's naked, bloody body, including some showing the knife in his back and others showing a close-up of his genitals.[40]

In ground one of his second-amended petition, Wolff alleges that he was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the Constitution when the trial court allowed the state to introduce gruesome autopsy and crime-scene photographs at trial.[41]  Wolff contends that the crime-scene photographs were "particularly

---

[35] ECF No. 22-24.

[36] *Id.*

[37] ECF No. 22-36 at 25, ECF No. 57; ECF No. 58.

[38] ECF No. 23-1 at 9–15, ECF Nos. 59-11 through 59-30.

[39] ECF No. 18 at 7.

[40] ECF Nos. 59-1 through 59-10.

[41] ECF No. 18 at 6–9.

gruesome" and that "[n]one of the photographs were necessary as numerous witnesses testified about the crime scene."[42]

In affirming Wolff's judgment of conviction on direct appeal, the Supreme Court of Nevada rejected Wolff's argument that the trial court erred by allowing the state to introduce the photographs at trial:

> Wolff's contention that the district court abused its discretion by allowing the prosecution to introduce crime scene and autopsy photographs lacks merit.[1]  Under NRS 48.035(1), relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice."  Here, the coroner testified that the photos aided her description of the types of injuries sustained by the victim.  Thus, we conclude that the district court acted within its discretion by admitting the crime scene and autopsy photographs.
>
> _____
>
> [1] The admissibility of autopsy photographs showing wounds on the victim's body "lies within the sound discretion of the district court, and, absent an abuse of that discretion, the decision will not be overturned.  *Sipsas v. State*, 102 Nev. 119, 123, 716 P.2d 231, 234 (1986) (quoting *Turpen v. State*, 94 Nev. 576, 577, 583 P.2d 1083, 1084 (1978)).[43]

The admission of photographs is a state-law matter that "lies largely within the discretion of the trial court."[44]  In a habeas proceeding, the federal court's review of a state court's evidentiary ruling is limited to "determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process."[45]  In *Holley v. Yarborough*, the Ninth Circuit noted that the Supreme Court "has not yet made a clear ruling that admission of irrelevant or

_____

[42] ECF No. 18 at 7.

[43] ECF No. 24-17 at 3.

[44] *Batchelor v. Cupp*, 693 F.2d 859, 865 (9th Cir. 1982).

[45] *Larson v. Palmateer*, 515 F.3d 1057, 1066 (9th Cir. 2008) (quoting *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998)).

overtly prejudicial evidence constitutes a due[-]process violation sufficient to warrant issuance of the writ."[46]  The court held that, due to the absence of clearly established federal law, it must deny habeas relief even though the state-court decision permitted the admission of evidence that denied the petitioner a fair trial.[47]  The Supreme Court has not issued a decision since *Holley* that would change that result.[48]

*Holley* controls the outcome here.[49]  Due to the absence of controlling Supreme Court precedent on the issue, the Supreme Court of Nevada's rejection of ground one could not have been contrary to, or an unreasonable application of, clearly established federal law.[50]  So, I must defer to the state court decision.  Even looking past the absence of clearly established federal law, ground one is without merit because Wolff has not shown that the admission of the photographs rendered his trial so fundamentally unfair as to violate due process.  For one, the photographs were relevant because they showed the number and severity of injuries that Marotto sustained, which undermined Wolff's defense that he killed Marotto in response to being sexually assaulted.  And the evidence that Wolff committed first-degree murder was so

---

[46] *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

[47] *Id*. (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

[48] *See Walden v. Shinn*, 990 F.3d 1183, 1204 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 791 (2022).

[49] *See id*. ("Walden's argument [challenging the allegedly improper admission of 19 purportedly 'gruesome' crime scene and autopsy photographs] is foreclosed by *Holley v. Yarborough*, in which we held that there was, at that time, no clearly established federal law providing that the 'admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.'").

[50] 28 U.S.C. § 2254(d)(1); *see Musladin*, 549 U.S. at 77 ("Given the lack of holdings from this Court . . . , it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (citation omitted)).

overwhelming that the photographs had little, if any, prejudicial impact.[51]  Thus, ground one is denied.

### 2.    *Ground three—the disclosure of inaccurate testimony as grounds for a mistrial*

When called as a witness early in the trial, Dr. Smith testified that her toxicology report showed that Marotto had 178 nanograms per milliliter of GHB in his blood.[52]  Several days later, the prosecution advised the court that they had discovered through their experts that the correct measurement was in micrograms, not nanograms.[53]  The prosecutor told the court that she notified defense counsel about the discrepancy because it could impact the defense Wolff intended to present.[54]  One of the prosecution's experts had advised the prosecutor that the level of GHB in Marotto's blood based on the corrected measurement would have rendered him unconscious.[55]  Defense counsel then requested the phone number of the expert with knowledge of the error and advised the court that he needed to "reassess and reevaluate what the evidence will be" before going forward.[56]  The court excused the jury until the following week.[57]

Before trial resumed, the parties advised the court that they agreed that Dr. Smith's testimony stating the unit of measurement for the GHB in Marotto's system was incorrect.[58]  To

---

[51] *See Romano v. Oklahoma*, 512 U.S. 1, 13 (1994) (concluding that the admission of irrelevant evidence did not "so infect the . . . proceeding with unfairness as to render the jury's [verdict] a denial of due process" where even without the improper evidence "the jury had sufficient evidence to justify its conclusion").

[52] ECF No. 23-1 at 19.

[53] ECF No. 23-15 at 146–47.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 149.

[57] *Id.* at 151.

[58] ECF No. 23-17 at 3.

correct the error, defense counsel called Dr. Bourland as a witness to clarify for the jury that the correct measurement was in micrograms, not nanograms.[59] Defense counsel also elicited testimony that, due to the nine-day time period between the measurement and Marotto's death, there was no way to predict how the level of GHB detected in Marotto's blood would have affected him.[60]

In ground three of his second-amended petition, Wolff alleges that he was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments because the trial court failed to grant a mistrial when it was determined that Dr. Smith's testimony was inaccurate.[61] He argues that the level of GHB in Marotto's blood was an essential fact pertinent to Wolff's defense, but the state did not disclose the error until the eleventh day of trial. According to Wolff, the late disclosure prevented counsel from "provid[ing] effective counsel mandated by the Sixth Amendment."[62]

In affirming Wolff's judgment of conviction on direct appeal, the Supreme Court of Nevada rejected Wolff's argument that the trial court erred by not declaring a mistrial:

> Because the district court gave the parties an opportunity to address the drug concentration reporting error and because the defense did not move for a mistrial, Wolff's contention that the district court should have declared a mistrial sua sponte is without merit.[2] After the prosecution disclosed the reporting error, the defense did not move the district court to declare a mistrial. Instead, the defense agreed to a continuance and to testimony from Dr. James Bourland, an expert witness who testified that given the period of time before the discovery of the body, it was not possible to determine whether the victim was conscious or unconscious due to GHB intoxication at or around the time of his death.

---

[59] ECF No. 23-18 at 8–9.

[60] *Id.*

[61] ECF No. 18 at 11–13.

[62] *Id.* at 13.

An appellant "must assert his right to a mistrial immediately or be deemed to have waived any alleged error."[3]  Therefore, Wolff waived the issue of the effect of the GHB reporting error on appeal.  Further, given Dr. Bourland's testimony, Wolff's self-defense testimony was still viable.  The district court adequately remedied any prejudicial effect the reporting error might have had on the defense's theory of the case.  Therefore, the district court did not abuse its discretion by not declaring a mistrial sua sponte.

_____

[2]"The trial court has discretion to determine whether a mistrial is warranted, and its judgment will not be overturned absent an abuse of discretion." *Rudin v. State*, 120 Nev. 121, 142, 86 P.3d 572, 586 (2004).  "A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached…" *Beck v. District Court*, 113 Nev. 624, 627, 939 P.2d 1059, 1061 (1997) (quoting *Illinois v. Somerville*, 410 U.S. 458, 464 (1973)).

[3]*Maxey v. State*, 94 Nev. 255, 256, 578 P.2d 751, 752 (1978).[63]

Here again, there is no Supreme Court decision with a clear holding that supports Wolff's claim, as required to surmount the Section 2254(d)(1) threshold.  Indeed, Wolff fails to cite any persuasive authority supporting the notion that a trial court's failure to grant a mistrial sua sponte can be grounds for habeas relief.  Thus, the Supreme Court of Nevada's rejection of ground three cannot be contrary to, or an unreasonable application of, clearly established federal law.[64]  And again, I must defer to the state court's decision denying relief.  In addition, Wolff fails to show that he was significantly prejudiced by the late disclosure of the inaccurate information.  Given the implausibility of Wolff's version of events, the prosecution did not need to rely on the level of GHB found in Marotto's blood to undermine Wolff's defense.  So ground three is denied.

_____

[63] ECF No. 24-17 at 3–4.

[64] *See Musladin*, 549 U.S. at 77.

1        **3.       *Ground four—ineffective assistance of counsel for failing to move for a mistrial***

2        In ground four of his second-amended petition, Wolff alleges that he was deprived of

3    effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments

4    because his attorney failed to move for a mistrial when the state disclosed the error in Dr.

5    Smith's toxicology report regarding the level of GHB in Marotto's blood.[65]

6        The right to counsel embodied in the Sixth Amendment provides "the right to the

7    effective assistance of counsel."[66]   Counsel can "deprive a defendant of the right to effective

8    assistance[ ] simply by failing to render 'adequate legal assistance[.]'"[67]   In *Strickland v.*

9    *Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a

10   petitioner to show that: (1) his counsel's representation fell below an objective standard of

11   reasonableness under prevailing professional norms in light of all of the circumstances of the

12   particular case;[68] and (2) it is reasonably probable that, but for counsel's errors, the result of the

13   proceeding would have been different.[69]

14       "A reasonable probability is a probability sufficient to undermine confidence in the

15   outcome."[70]   Any review of the attorney's performance must be "highly deferential" and must

16   adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting

17   effects of hindsight.[71]   "The question is whether an attorney's representation amounted to

18

_____

19   [65] ECF No. 18 at 13–16.

20   [66] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

21   [67] *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

     [68] *Strickland*, 466 U.S. at 690.

22   [69] *Id*. at 694.

23   [70] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

     [71] *Strickland*, 466 U.S. at 689.

incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[72]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[73]

Wolff did not present ground four to the state court.  As explained in my order deciding the respondents' motion to dismiss, the claim is technically exhausted but procedurally defaulted because a state-court remedy is no longer available to Wolff.[74]  Even if Wolff were able to overcome the procedural default, ground four fails on the merits under de novo review.

As noted above, defense counsel responded to the disclosure of the error in the toxicology report by calling Dr. Bourland as a witness and eliciting testimony that, due to the nine-day time period between the measurement and Marotto's death, there was no way to predict how the level of GHB detected in Marotto's blood would have affected him.[75]  On rebuttal, the state called its expert witness, Dr. Karagoizis, who testified that the level of GHB in Marotto's system, when mixed with the alcohol he consumed, should have rendered him sedated, if not asleep.[76]  Defense counsel called another expert, Dr. Roitman, as a surrebuttal witness.  Dr. Roitman testified that one cannot predict a how a person would react to the drugs found in Marotto's system based merely on the levels because there are "a tremendous number of subjective factors" involved, such as "tolerance, drug interactions, and metabolic factors."[77]

---

[72] *Richter*, 562 U.S. at 104.

[73] *Id.*

[74] ECF No. 47 at 14–16.

[75] ECF No. 23-18 at 8–9.

[76] *Id.* at 77–82.

[77] ECF No. 23-20 at 36–37.

The record demonstrates that defense counsel's performance did not fall below an objective standard of reasonableness.  Counsel responded effectively to the disclosure of the error by requesting time to reevaluate his case and then presenting evidence to refute the notion that the corrected GHB level on the toxicology report would have rendered Marotto incapable of sexually assaulting Wolff.  And it is extremely unlikely that the trial court would have granted a mistrial rather than a continuance if defense counsel had made such a motion.  The failure to take a futile action can never constitute deficient performance under *Strickland*.[78]  For the same reason, Wolff does not meet the prejudice prong of the *Strickland* test.  So ground four is denied.

### 4.      Ground five—prosecutorial misconduct

A former friend of Wolff's, Steve Thiessen, was called as witness by both the state[79] and the defense.[80]  When called by the defense, the state cross-examined Thiessen about an incident in which Wolff cashed Thiessen's roommate's check and kept the money, then, when confronted about it, gave Thiessen and his roommate a check with a stop-payment order on it.[81]  At that point, the cross-examination proceeded as follows:

> Q: And would you say that the defendant—well, let me ask you this: what is your opinion as to his truthfulness?  Do you believe he's a truthful person?
>
> [Defense counsel]: Judge, he hasn't testified.  That's an improper question.  She can bring him back if she wants.
>
> The Court: Sure.  You can bring him back.

---

[78] *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996); *see also Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

[79] ECF No. 22-49 at 11–15.

[80] ECF No. 23-11 at 177–88.

[81] *Id*. at 184–85.

> [Prosecutor]: Well, Your Honor, [defense counsel] asked him about whether or not the defendant was a thief.  I'm just asking if he has an opinion as to whether or not the defendant is a truthful person.
>
> The Court: I will let you bring him back.
>
> [Prosecutor]: I don't want to bring him back, Judge.  Let me ask it this way:
>
>  Did he tell you right away that he had taken the check from you, from the job site?
>
> A: No.[82]

At the outset of proceedings the following day, defense counsel moved for a mistrial, arguing that the state committed "extraordinarily prejudicial" prosecutorial misconduct by asking Thiessen for his opinion about Wolff's truthfulness prior to Wolff testifying.[83]  The court denied the motion.[84]

In ground five, Wolff alleges that he was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments because this instance of prosecutorial misconduct denied him a fair trial.[85]  He further contends that the court's failure to issue a curative instruction or grant a mistrial allowed the jury to infer that he was a liar, thereby implicating his Fifth Amendment right to remain silent.

In affirming Wolff's judgment of conviction on direct appeal, the Supreme Court of Nevada rejected Wolff's argument that he was denied due process and a fair trial due to prosecutorial misconduct:

---

[82] *Id*. at 185–86.

[83] ECF No. 23-14 at 5–7.

[84] *Id*.

[85] ECF No. 18 at 16–18.

> Wolff's contention that the prosecutor's misconduct in asking an improper character for truthfulness question deprived him of due process and a fair trial lacks merit.  Because the district court sustained the defense's objection to the question before the witness offered an answer, Wolff suffered no harm.[86]

To prevail on a claim of prosecutorial misconduct in a habeas action, a petitioner must show that the comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[87]  A challenged statement by the prosecutor must be evaluated in the context of the entire trial, as well as the context in which it was made.[88]  And, even if a prosecutor's conduct amounts to constitutional error, habeas relief will be granted only if petitioner can establish that the alleged error "'had a substantial and injurious effect or influence in determining the jury's verdict.'"[89]

To be sure, it was improper for the prosecutor to ask Thiessen whether he thought Wolff was a truthful person.[90]  In context, however, the question had very little, if any, prejudicial impact.  When the prosecutor posed the question, the jury had already heard testimony from Thiessen that Wolff had been dishonest with him twice in relation to the check incident.[91]  Thus, the question did not create an inference that did not already exist.  And, as the Supreme Court of Nevada pointed out, Thiessen never answered the question.

---

[86] ECF No. 24-17 at 4-5.

[87] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Greer v. Miller*, 483 U.S. 756, 765 (1987) (applying standard to assess prosecutor's improper question in the presence of the jury).

[88] *See Boyde v. California*, 494 U.S. 370, 384–85 (1990).

[89] *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *see also Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (finding no prejudice from prosecutorial misconduct because it could not have had a substantial impact on the verdict under *Brecht*).

[90] *See Daly v. State*, 665 P.2d 798, 803 (Nev. 1983) (holding that evidence of the defendant's truthfulness is relevant in only three situations, none of which applies here).

[91] ECF No. 23-11 at 179–80, 184–85.

Nor did the trial court's failure to issue a curative instruction or grant a mistrial infringe Wolff's right to remain silent.  Wolff fails to elaborate on this claim or provide any legal authority to support it.  And even if the trial court committed constitutional error, Wolff would still need to demonstrate that the error resulted in "actual prejudice," which he cannot do.[92]  In sum, the Supreme Court of Nevada's adjudication of the claim did not "result[ ] in a decision that was contrary to, or involve[ ] an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," nor did it "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding."  Ground five is denied.

### 5.    *Ground nine—defective reasonable-doubt instruction*

During settlement of jury instructions at the end of the trial, defense counsel proposed a reasonable-doubt instruction from a Ninth Circuit case.[93]  The trial court rejected the proposed instruction.[94]  The instruction given to the jury read as follows:

> Reasonable doubt is one based on reason.  It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life.  If the minds of the jurors that the entire comparison and consideration of all the evidence are in such a condition that they say they feel an abiding conviction of the truth of the charge, there is not reasonable doubt.  Doubt to be reasonable must be actual, not the mere possibility of speculation.[95]

In ground nine of his petition, Wolff contends that the instruction did not provide the jury with meaningful principles or standards to guide it in evaluating the evidence, thus violating the

---

[92] *See Davis v. Ayala*, 576 U.S. 257, 267 (2015) (citing *Brecht*, 507 U.S. at 637).

[93] ECF No. 23-23 at 13–14.

[94] *Id.*

[95] ECF No. 23-24 at 39.

Fifth, Sixth, and Fourteenth Amendments.[96]  He further contends that the instruction improperly

quantified reasonable doubt and shifted the burden to Wolff in violation of the United States

Supreme Court's opinion in *Victor v. Nebraska*.[97]

In affirming Wolff's judgment of conviction on direct appeal, the Supreme Court of

Nevada rejected Wolff's argument that the reasonable-doubt instruction was unconstitutional:

> We disagree with Wolff's contention that the reasonable doubt
> standard instruction is unconstitutional.  The district court
> instructed the jury on reasonable doubt using the verbatim
> language of NRS 175.211(1).  We have upheld the constitutional
> validity of the statutory reasonable doubt instruction.[6]  The district
> court did not abuse its discretion by instructing the jury on the
> reasonable doubt standard.
>
> ———————
>
> [6] *Lord v. State*, 107 Nev. 28, 40, 806 P.2d 548, 556 (1991).[98]

The United States Supreme Court in *In re Winship* held that "the Due Process Clause

protects the accused against conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is charged."[99]  In *Victor*, the High Court

recognized that "the Constitution does not require that any particular form of words be used in

advising the jury of the government's burden of proof.  Rather, 'taken as a whole, the

instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'"[100]  In

assessing the constitutionality of a reasonable[-]doubt instruction, the inquiry is "whether there is

———————————

[96] ECF No. 18 at 26–27.

[97] *Victor v. Nebraska*, 511 U.S. 1, 20 (1994).

[98] ECF No. 24-17 at 5.

[99] *In re Winship*, 397 U.S. 358, 364 (1970).

[100] *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (internal citation omitted) (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)).

1  a reasonable likelihood that the jury understood the instructions to allow conviction based on

2  proof insufficient to meet the *Winship* standard."[101]

3      In *Ramirez v. Hatcher*, the Ninth Circuit evaluated post-*Victor* the same reasonable-doubt

4  instruction at issue here.[102]  The panel explained that it did "not endorse the Nevada instruction's

5  'govern or control' language," but "not every unhelpful, unwise, or even erroneous formulation

6  of the concept of reasonable doubt in a jury charge renders the instruction constitutionally

7  deficient."[103] And the court held that, "[c]onsidering the jury instructions in this case in their

8  entirety, . . . the 'govern or control' language did not render the charge unconstitutional."[104]

9      Wolff offers no reason why the reasonable-doubt instruction in his case should be treated

10  differently than the same instruction in *Ramirez*.  Because the language of this instruction has

11  been determined by the Ninth Circuit to be constitutional, the Supreme Court of Nevada's

12  decision reaching the same conclusion was neither contrary to, nor an unreasonable application

13  of, clearly established federal law.  Ground nine is thus denied.

14      **6.    *Ground ten—cumulative error***

15      In ground ten, Wolff alleges that the cumulative effects of the errors at trial violated his

16  rights under the Fifth, Sixth and Fourteenth Amendment.[105]  In affirming Wolff's judgment of

17  conviction on direct appeal, the Supreme Court of Nevada rejected Wolff's cumulative-errors

18  argument:

19

20  [101] *Id*. at 6.

    [102] *Ramirez v. Hatcher*, 136 F.3d 1209, 1210–11 (9th Cir. 1998).

21  [103] *Id*. at 1214 (quotation omitted).

22  [104] *Id*.; *see also Nevius v. McDaniel*, 218 F.3d 940, 944 (9th Cir. 2000) (holding that the
    reasonable-doubt jury instruction was identical to the one in *Ramirez*, so "[t]he law of this circuit
23  thus forecloses Nevius's claim that his reasonable doubt instruction was unconstitutional").

    [105] ECF No. 18 at 27–28.

> Wolff's contention that cumulative errors below deprived him of a fair trial is without merit. Cumulative errors may justify the order of a new trial even if the errors, standing alone, are harmless.[12] Because we conclude that that the district court committed only one error during Wolff's trial, a new trial is not warranted.
>
> ───────────────
>
> [12] *Byford v. State*, 116 Nev. 215, 241-42, 994 P.2d 700, 717 (2000).[106]

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."[107]  Having found no errors, there is nothing for me to cumulate.[108]  Thus, ground ten is denied.

## C.    Certificate of appealability

The right to appeal from the district court's denial of a federal habeas petition requires a certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial showing of the denial of a constitutional right."[109]  "Where a district court has rejected the constitutional claims on the merits," that showing "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[110]  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional

───────────────

[106] ECF No. 24-17 at 7–8.

[107] *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

[108] The error found by the Supreme Court of Nevada is not before me in this proceeding.  *See* ECF No. 24-17 at 6–7.

[109] 28 U.S.C. § 2253(c).

[110] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).

right and (2) whether the court's procedural ruling was correct.[111]  I decline to issue a certificate of appealability for my resolution of any procedural issues or any of Wolff's habeas claims.

### Conclusion

IT IS THEREFORE ORDERED that Wolff's second amended petition for a writ of habeas corpus **[ECF No. 18] is DENIED**, and because reasonable jurists would not find this decision to deny the petition to be debatable or wrong, **a certificate of appealability is DENIED**.

IT IS FURTHER ORDERED that Wolff's motion for leave to file exhibits under seal **[ECF No. 58] is GRANTED**.[112]  The Clerk of Court is directed to **MAINTAIN THE SEAL on ECF No. 59**.

IT IS FURTHER ORDERED that the **Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
September 26, 2023

---

[111] *Id.*

[112]  I find that there are compelling privacy reasons to restrict the public's access to the exhibits. *See Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).